UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>vs.<br><br>STEVEN DOTSON,<br><br>    *Defendant.* | 1:11-cr-56-WTL-KPF-1 |

## ENTRY FOLLOWING BENCH TRIAL

The prosecution, the United States of America ("the Government"), seeks a criminal conviction of the Defendant Steven Dotson for violating 18 U.S.C. § 922(g)(1) by knowingly possessing, in and affecting commerce, a firearm, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year. For the following reasons, the Court finds the Defendant **GUILTY** as charged in the indictment.

## I. LEGAL STANDARD

To sustain a charge of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1) against Dotson, the Government must prove the following elements: (1) prior to September 5, 2010, Dotson had been convicted of a crime that was punishable by a term of imprisonment of more than one year; (2) on September 5, 2010, Dotson knowingly possessed a firearm; and (3) the firearm possessed by Dotson had traveled in interstate commerce prior to Dotson's possession of it on September 5, 2010.

## II. FACTUAL FINDINGS

On December 12, 2011, a bench trial was conducted, during which one witness testified: Adam Galbraith, a Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives. In addition, the Government and the Defendant filed stipulations on December 9, 2011. The Court derives its factual findings from these stipulations and the testimony of the witness.

Dotson was arrested on September 5, 2010, by the Indianapolis Metropolitan Police Department, pursuant to allegations of assault and brandishing a firearm earlier that same day.

During a search incident to his arrest, a semi-automatic handgun was found in Dotson's front pants pocket.

The handgun was manufactured by Beemiller, Inc., in Mansfield, Ohio, and is a Hi Point .380 caliber pistol bearing serial number P741980.

Subsequent to Dotson's arrest, the handgun was analyzed by the Bureau of Alcohol, Tobacco, Firearms and Explosives, and was determined to be inoperable due to damage sustained by the handgun. Specifically, the breach, slide, barrel, and extractor were damaged, and corrosion and rust inhibited free movement of the internal parts.

The parties' stipulations establish the following: (1) Dotson had been previously convicted of several felony criminal offenses punishable by imprisonment in excess of one year; (3) Dotson knowingly possessed the handgun; and (3) the handgun had traveled in and affected interstate commerce prior to coming into Dotson's possession within the Southern District of Indiana.

## III. **DECISION**

The parties' stipulations establish all elements of the charge, with the exception of whether the gun possessed by Dotson fits the definition "firearm" in 18 U.S.C. § 921(a)(3). A firearm is defined in the statute as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921(a)(3). While the Government argues that the gun satisfies the definition in subsection (A), Dotson argues that it does not meet the definition by virtue of the damage it has sustained.

Applying the statute, the Court finds that the handgun would not expel a projectile at the time it was possessed by Dotson, as the Government and Dotson have stipulated that the gun was inoperable. Second, the Court finds that the gun could not have been readily converted to do so, as the Government in fact conceded that the gun was not readily able to be made capable of expelling a projectile.[1] The only remaining issue is whether the gun Dotson possessed was, at the time he possessed it, "designed to expel a projectile."[2] If it was, it satisfies the definition regardless of its state of operability. *See United States v. Rivera*, 415 F.3d 284, 286-87 (2nd Cir.

---

[1] At trial, the Government argued that it *not* so conceded, yet in its trial brief (dkt. no. 32), the Government states that the gun was "in poor condition and inoperable (not capable of firing, nor readily able to be made so capable)." Further, the Government has presented no evidence to support a finding that the gun could be readily converted to expel a projectile.

[2] The Court recognizes that "hang[ing] the inquiry entirely upon the 'designed to' prong may indeed lead in some cases to unedifying circularities." *United States v. Brown*, 117 F.3d 353, 355 (7th Cir. 1997). However, given the evidence adduced at trial, the parties' stipulations, and the parties' arguments, this prong is all that remains, and so the Court must take up this inquiry.

3

2005) ("As the evidence showed that the weapon was 'designed to . . . expel a projectile . . .' we need not consider whether it also showed that the weapon 'may readily be converted to expel a projectile by the action of an explosive.' The statute was clearly written in the disjunctive.").

The Court begins its inquiry by noting that there is no question that the gun was *originally* designed to expel a projectile. However, the statute requires that the gun *is* designed to expel a projectile; that is, at the moment in time when it was possessed, and Dotson argues that "the object in question was in such a state of disrepair and was so altered that it is no longer designed to expel a projectile." The proper scope of inquiry thus entails the nature and degree of changes to the gun that have occurred as those changes bear on the weapon's original design.

"[A] number of courts have held that damage to [a weapon] . . . does not bring a weapon outside the statute's broad definition." *United States v. Brown*, 117 F.3d 353, 355 (7th Cir. 1997). For example, in *Brown* the Seventh Circuit held that the removal of a gun's firing pin[3] was not an alteration that rendered the gun no longer designed to expel a projectile. *Id.* The Court further found that, even if the removal of a firing pin so altered the gun's design, the removal of the firing pin did not preclude the weapon's being readily converted to operability, and thus the gun would qualify as a firearm under this alternative prong. *Id.* at 356.

Assuming (as the Seventh Circuit does in *Brown*) that a weapon originally designed to expel a projectile may reach a point at which it is no longer designed to do so, the known points on this continuum establish that Dotson's gun retained its design. At the far end of the continuum lie those guns that have been redesigned: a theater prop, *Rivera*, 415 F.3d at 286-87,

---

[3] Although the Court discussed "damage" to a gun, the removal of the firing pin in *Brown* was intentional; an undercover officer removed the gun's firing pin before supplying the gun to the defendant in order to render it inoperable.

4

and a "dewatted firearm-ornament," *United States v. Wada*, 323 F.Supp.2d 1079, 1080 (D. Or. 2004). In these cases, the user or owner of the gun created a new design by adding or removing parts, or both. *See Rivera*, 415 F.3d at 286-87 (explaining that gun's barrel would be filled with lead); *Wada*, 323 F.Supp.2d at 1081 (explaining that defendant cut firearm vertically, "cut[] a slot out of the barrel and weld[ed] a metal rod to the barrel, or drill[ed] a hole on one side of the barrel and insert[ed] a hardened metal pin into the barrel and through a steel rod"). Thus, the theater prop in *Rivera* and the firearm-ornament in *Wada* ceased to be designed to expel a projectile and acquired a new design as theater prop or ornament, respectively.

However, merely removing parts is not always enough to constitute a new design. In *Brown*, an undercover officer removed the gun's firing pin before supplying it to the defendant. 117 F.3d at 354. In that case, the Seventh Circuit held that the point at which a gun is redesigned was not crossed with the removal of the gun's firing pin. *Id.* at 355.

Dotson's gun falls even farther from the point of redesign on the continuum. While the officer in *Brown* actively removed the firing pin, no parts have been added or removed from Dotson's gun; the gun has merely fallen into a state of gross disrepair.[4] Without more, the gun has not lost its original design; the gun used in this case has not ceased to be designed to expel a projectile. The Court therefore holds that, as a matter of law, the gun possessed by Dotson is a

---

[4] In making this observation, the Court is mindful of the argument mentioned, but not evaluated, by the Seventh Circuit in *Brown*: "[W]e take Brown's argument to be that the point at which a gun becomes so altered that one cannot speak meaningfully of its original design must be determined with reference to the purpose behind the alteration." 117 F.3d at 355. Here there was no such purpose, as there was no intentional alteration.

firearm as defined by 18 U.S.C. § 921(a)(3)(A).[5]

The Government's alternative argument bears brief mention. Citing section (B) of the statute, including within the definition of "firearm" the "frame or receiver of any such weapon," the Government asserts that the gun Dotson possessed is a firearm because it included the frame or receiver. Indeed, *Brown* held that "were there any doubt as to whether the gun Brown possessed met the definition of firearm, we are satisfied that it qualified as 'the frame . . . of any such weapon." 117 F.3d at 356 (citing *United States v. Hunter*, 101 F.3d 82, 85 (9th Cir. 1996) ("the term 'firearm' includes mere parts of a gun which alone are incapable of firing, such as the frame, receiver, muffler or silencer-clearly indicating Congress did not consider operability as an essential statutory element")). Officer Galbraith testified at trial that the gun did include the frame or receiver and the Court credits his testimony. Thus, whether section (B) refers back to

---

[5] In so holding, the Court notes that "Congress was . . . troubled by the coercion and fear caused by [semiautomatic] weapons, specifically pointing out that criminal gangs routinely use the apparent firepower of semiautomatic assault weapons for intimidation. . . . [I]ntimidation will be caused by a semiautomatic assault weapon whether the gun is loaded and operable or not. It was [the user's] perceived, not actual, ability to harm which caused [his victims] to submit to his will. . . . 'Unloaded firearms . . . increase the risk of violence by others who may respond to the perceived danger presented by the [presumably operable] gun.'" *United States v. Hunter*, 101 F.3d 82, 86 (9th Cir. 1996) (citing *United States v. Martinez*, 967 F.2d 1343, 1346 (9th Cir. 1992)), *cited with approval in Brown*, 117 F.3d 356.

the three descriptors in (A), as Dotson argues,[6] or whether it is independent of the subsection (A) requirements, as suggested by *Brown*, the Court finds that the handgun Dotson possessed also meets the definition of a firearm because it is the frame or receiver of any such weapon pursuant to 18 U.S.C. § 921(a)(3)(B).

## IV. CONCLUSION

The Court holds as a matter of law that the gun possessed by Dotson on September 5, 2010, is a firearm as defined by 18 U.S.C. § 921(a)(3). Finding that the Government has proved all the elements of the charge, the Court hereby finds the Defendant Steven Dotson **GUILTY** as charged in the indictment.

Sentencing to be set by separate order.

SO ORDERED: 01/09/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

All counsel of record, via electronic communication

U.S. Marshal Service

---

[6] Dotson correctly points out that section (B) requires that the frame or receiver be that of "any such weapon," which he argues refers back section (A), thereby superimposing the requirement that the weapon "will or is designed to or may readily be converted to expel a projectile by the action of an explosive."